UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| DEBRA ROWE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:06 CV 291 |
| | ) | |
| GARY HOUSING AUTHORITY et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Debra Rowe filed a complaint alleging that defendants violated

her Fourteenth Amendment due process rights by terminating her employment

with the Gary Housing Authority. (Docket #1 at 1.) Rowe seeks recovery under

42 U.S.C. § 1983. (*Id*.) Plaintiff's complaint also alleges a pendent state-law claim

for intentional infliction of emotional distress in connection with Rowe's

termination. (*Id*.) Now before the court is a motion for summary judgment filed

by defendants Gary Housing Authority ("GHA"), Estelle Brooks, Valeria

Johnson-Fletcher, John Matson, Christopher Turner, Terry Alexander, George

Winters, Charles Jackson, Ola Morris, and Merle Heckman (collectively

"defendants"). (Docket #60.) For the reasons that follow, the court **GRANTS**

summary judgment in favor of defendants on all of plaintiff's claims.

## I. BACKGROUND[1]

Debra Rowe began her job as a Property Manager with the GHA in January 2003. (Docket #1 at 3.) In November of 2004, Rowe was promoted to Director of Property Management, reporting directly to Estelle Brooks. (Docket #61-17 at 26, 29.) Rowe's troubles at work began sometime around the late summer or early fall of 2005. (*See* docket #61 at 3.) Rowe was eventually fired, and the events surrounding her termination form the basis of her case.

Rowe's relationship with her supervisor, Estelle Brooks, had been deteriorating for several months prior to her departure. On September 23, 2005, Rowe and Brooks had a short meeting where Brooks raised some ongoing issues, including, among other things, significant management problems with a GHA program under Rowe's supervision. This was not the first time that Rowe had heard about problems with her work. (Docket #61 at 3, #61-17 at 53, 68-70, 78.) After some back and forth, Brooks became frustrated and ended the meeting by telling Rowe to put her responses in writing and to submit them by the following Monday morning. (Docket #61-17 at 86; #1 at 5.) Two days later, on September 25, 2005, Brooks had a Gary police officer, acting as GHA security, courier a letter to Rowe at her home. (Docket #61-14 at 86-87.) The letter informed Rowe of

---

[1]The facts in this section are either undisputed or, when in dispute, resolved in favor of plaintiff. *See Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999) (noting that during summary judgment the court construes all facts in the light most favorable to the nonmoving party).

Brook's decision to suspend her without pay pending an internal investigation. (Docket #1 at 5.) In response, Rowe requested and was granted a grievance hearing with the GHA's Board of Commissioners, but on October 19, 2005—one day before her scheduled hearing—Rowe again had a Gary police officer at her door with a notice from the GHA informing Rowe that she had been terminated. (Docket #1 at 5-6.) Rowe then requested and was given a post-termination grievance hearing. The hearing was held on November 1, 2005 before Merele Heckman, the GHA's Director of Human Resources. (*Id*. at 6.) Two weeks after the hearing, Heckman sent Rowe a letter denying her grievance. The letter indicated that Rowe could appeal the decision to the GHA's Board of Commissioners. (Docket #1 at 6; #61-8.) Rowe did request an appeal hearing which was scheduled for December 29, 2005. However, after Rowe learned that the board no longer had the authority to overturn her termination, she opted not to attended her hearing. (Docket #61-17 at 98-104.) On August 16, 2006, Rowe filed suit.

Rowe's first claim alleges that defendants violated her due process rights by failing to provide a meaningful pre-termination hearing so she could present her side of the story. Rowe's second claim alleges that through the termination, defendants violated her liberty interests in pursuing the career of her choice. Rowe also contends that Brooks's use of Gary police officers to deliver her suspension and termination notices to her home was extreme and outrageous

and therefore filed a claim against Brooks individually for intentional infliction of

emotional distress. (Docket #1 at 8-9.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c). "[A] party

seeking summary judgment always bears the initial responsibility of informing

the district court of the basis for its motion, and identifying those portions of 'the

pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any,' which it believes demonstrate the absence of

a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)

(quoting FED. R. CIV. PROC. 56(c)). Once the moving party has met its burden, the

nonmovant may not rest upon mere allegations. When confronted with a motion

for summary judgment, "[a] party who bears the burden of proof on a particular

issue may not rest on its pleading, but must affirmatively demonstrate, by

specific factual allegations, that there is a *genuine* issue of material fact which

requires trial." *East-Miller v. Lake County Highway Dep't.*, 421 F.3d 558, 561 (7th

Cir. 2005) (citing *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir.1988)).

When considering a motion for summary judgment, the court views the record

and all reasonable inferences in a light most favorable to the nonmovant. *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999).

## III. DISCUSSION

### A. *Plaintiff's Due Process Claims*

The Fourteenth Amendment forbids state actors from depriving "any person of life, liberty, or property, without due process of law." US CONST. amend XIV, § 1. To make a valid due process claim, plaintiff must first establish a cognizable life, liberty, or property interest as a matter of substantive law, and then show that a state actor deprived her of the interest without due process. *See Sonnleitner v. York*, 304 F.3d 704, 711 (7th Cir. 2002). Plaintiff alleges that defendants deprived her of two protected interests without due process: a property interest in her continued employment with GHA and a liberty interest in her professional reputation. (Docket #1 at 8-9.)

### 1. *Plaintiff's Property Interest in Continued Employment*

To establish a due process deprivation in the employment context, plaintiff must first show that she had a protected property interest in continued employment under applicable state law. *See Moulton v. Vigo County*, 150 F.3d 801, 804 (7th Cir. 1998).Under Indiana law, an at-will employee has no property interest in continued employment. *Id*. Plaintiff admits she was hired as an at-will employee, but contends that Brooks created an implied contract of continued employment during her exchange with plaintiff two days before plaintiff's

suspension. Plaintiff contends that Brooks created the contractual obligation when she said, "see you Monday" and instructed plaintiff to submit her responses to the management problems in writing. (Docket #65 at 9.) Plaintiff reasons that "[o]ne does not give an assignment to a terminated employee," and characterizes Brooks's statements as "implicit verbal assurances of vested continued employment until Monday." Plaintiff concludes that Brooks's statements "indicate a mutual understanding . . . that Rowe's job was secure at least until Monday." (Docket #65 at 9.)

Plaintiff jumps to her remarkable conclusion without any discussion of applicable contract-law principles. Her omission is perhaps not surprising given that the law offers her claim absolutely no support. Indiana law recognizes only three ways to rebut the presumption of at-will employment: independent consideration, promissory estoppel, and a public policy exception arising from a statutory right or duty. *See Orr v. Westminster Village N.*, 689 N.E.2d 712, 718 (Ind. 1997). Plaintiff alleges no facts indicating that she offered any independent consideration to contractually bind her employer, nor does she articulate any detrimental reliance to support a promissory estoppel theory.[2] She likewise offers

---

[2]Even if she could meet the elements of promissory estoppel, the Indiana Supreme Court has held that in the employment context, remedies under a promissory estoppel theory are limited to damages directly resulting from a terminated employee's reliance and "will not include the benefit of altering the employment status from an at-will relationship to a permanent one which requires just cause for termination." *Jarboe v. Landmark Cmty. Newspapers*, 644 N.E.2d 118, 122 (Ind. 1994).

no public policy theory on which the court could base an implied contract. In short, she has no legal grounds on which to stake her claimed right to keep her job. Throughout her tenure, plaintiff was an at-will employee subject to termination with or without cause at any time. Because plaintiff had no protected interest, defendants owed her no due process before terminating her. Defendants are therefore entitled to summary judgment on plaintiff's first claim.

2. *Plaintiff's Liberty Interest in Her Reputation*

Plaintiff's second claim alleges that defendants GHA, Brooks, and Heckman deprived her of her liberty interest in her name and reputation without due process. (Docket #1 at 9.) Under Seventh-Circuit precedence, a state employee has a protected liberty interest to pursue the career field of her choice. *See Townsend v. Vallas*, 256 F.3d 661, 669 (7th Cir. 2001). A state employer threatens this interest by terminating an employee under publicly-disclosed circumstances that call into question "the employee's good name, reputation, honor or integrity . . . in manner that makes it virtually impossible for the employee to find new employment in [her] chosen field." *Id.* at 670 (citing cases). Plaintiff claims that since losing her job, she has had difficulty getting a job in a similar field. Although she has had some five interviews, none have led to an offer. Plaintiff points out that although she "does not have GHA listed under her personal references, she does have GHA listed as a previous employer on her

resume." Plaintiff contends that "[t]his is obviously a red flag," and "she is now forced to tell prospective employers that she was just 'transitioning.'" (Docket #65 at 13.)

Defendants are entitled to summary judgment because plaintiff has failed to allege sufficient facts to warrant a trial. To establish a deprivation of her liberty interest, plaintiff must show that (1) she was stigmatized by the employer's actions, (2) the stigmatizing information was publicly disclosed, and (3) she suffered a tangible loss of other employment opportunities as a result of the disclosure. *Dupuy v. Samuels*, 397 F.3d 493, 509 (7th Cir. 2005). Plaintiff's claim clearly falls short on two of these three elements.

Under the first of the three requirements, to implicate a liberty interest, the alleged stigmatization must "impugn[] the employee's moral character or impl[y] dishonesty or other job-related moral turpitude." *Omosegbon v. Wells*, 335 F.3d 668, 675 (7th Cir. 2003) (citing *Hedrich v. Bd. of Regents*, 274 F.3d 1174, 1184 (7th Cir. 2001)). Yet the only stigma plaintiff alleges is the one she assumes that prospective employers associate with her failure to list GHA in her references. (Docket #61-17 at 135.) Although omitting her most recent employer on her references list may hurt her employment prospects, it is not the kind of stigmatizing charge that gives rise to a liberty interest. *See Perry v. Sindermann*, 408 U.S. 593, 599 (1972) (holding that "the mere showing that he was not rehired in one particular job, without more, [does] not amount to a showing of a loss of

liberty"); *Bd. of Regents v. Roth*, 408 U.S. 564, 574 n.13 (1972) (noting that a plaintiff's "record of non-retention in one job, taken alone, might make him somewhat less attractive to some other employers [but] would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty'").

Further, plaintiff's claim fails on the second necessary element and therefore cannot survive summary judgment. Plaintiff has not shown that defendants publicly disclosed the stigmatizing information. For their part, defendants offered corroborating affidavit testimony that no one at the GHA has offered any prospective employers information about plaintiff and that no prospective employers have even contacted the GHA on plaintiff's behalf. *(See* docket #61-11 at 1-2; #61-3 at 1-2; #61-2 at 2; #61-15 at 1-2; #61-16 at 1-3.) Plaintiff's only allegation is that she had interviews, but once employers get to the point of checking her past employment, she never gets a call back. (Docket #61-17 at 17.) Plaintiff assumes this is related to her problems at GHA, but admits that she has "no idea" of any specific instances when a prospective employer obtained any information about her from the GHA. *(See* docket #65 at 13; #61-17 at 18-19, 134-136.) With no alleged conduct to satisfy the public disclosure element, plaintiff's claim cannot survive summary judgment. *See Omosegbon v. Wells*, 335 F.3d at 675 (holding that to avoid summary judgment, a plaintiff has to show that the circumstances surrounding his denial of employment were publicly disseminated); *Ratliff v. Milwaukee*, 795 F.2d 612, 627 (7th Cir. 1986)

9

(holding that "[a]bsent proof that . . . defendants disseminated the stigmatizing information in a manner which would reach future potential employers of the plaintiff or the community at large, [plaintiff] cannot show that the defendants' actions impinged on her liberty interest in pursuing her occupation").

### B. *Plaintiff's Intentional Infliction of Emotional Distress Claim*

Plaintiff's complaint also includes a state-law claim for intentional infliction of emotional distress (IIED). Plaintiff alleges that Brooks "abused[ed] her authority and purposely intimidat[ed]" her by "sending police officers to suspend and terminate her employment." (Docket #65 at 16.) Now that both of plaintiff's federal claims have been dismissed, the court has discretionary jurisdiction over her state-law claim. *See* 28 U.S.C. § 1367(c). In the interest of judicial economy—because dismissal is so clearly warranted—the court finds this an appropriate case over which to exercise discretionary jurisdiction. *See Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1252 (7th Cir. 1994) (counseling district courts to exercise jurisdiction when the correct disposition of a state law claim is clear).

Indiana law imposes strict limits on conduct severe enough to support an IIED claim. Given the demanding standard, courts applying Indiana law may, in appropriate cases, determine what constitutes extreme and outrageous conduct as a matter of law. *Branham v. Celadon Trucking Servs.*, 744 N.E.2d 514, 523 (Ind.

Ct. App. 2001). Liability for IIED can only be based on conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bradley v. Hall*, 720 N.E.2d 747, 752-53 (Ind. Ct. App. 1999) (quoting Restatement (Second) of Torts § 46). Brooks's decision to use a Gary police officer to courier plaintiff's suspension and termination notices clearly falls short of this high standard. In addition, Plaintiff did not offer any evidence suggesting that Brooks intended to harm or humiliate her. This missing intent is a necessary element for IIED. *See Branham*, 744 N.E.2d at 523 (citing cases) (explaining that "intent to harm one emotionally" is "the basis for the [IIED] tort"). Given these flaws, plaintiff's IIED claim cannot survive summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the court **GRANTS** defendants' motion for summary judgment on all of plaintiff's claims. The court directs the clerk to **ENTER THIS FINAL JUDGMENT**:

> Judgment is entered in favor of defendants and against plaintiff denying all relief on all of plaintiff's claims.

**SO ORDERED.**

DATE: March 18, 2008

s/ James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT